

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-19-2005

# Mercer Street Friend v. USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1258

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Mercer Street Friend v. USA" (2005). *2005 Decisions.* Paper 1560.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1560

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 04-1258
_____

MERCER STREET FRIENDS, New Jersey,
Appellant

v.

UNITED STATES OF AMERICA,
Department of Health and Human Services,
Centers for Medicare & Medicaid Services

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 02-cv-05487)
District Judge: Honorable Garrett E. Brown, Jr.

_____

Submitted Under Third Circuit LAR 34.1(a)
on December 7, 2004

Before:  RENDELL, FISHER and YOHN*, Circuit Judges.

(Filed:   January 19, 2005)

_____

OPINION OF THE COURT
_____

_____

* Hon. William H. Yohn, Jr., Senior Judge of the United States District Court for the
Eastern District of Pennsylvania, sitting by designation.

YOHN, District Judge.

Mercer Street Friends, New Jersey ("appellant") appeals from an order of the district court granting summary judgment to the United States Department of Health and Human Services, Centers for Medicare and Medicaid Services ("appellee"). Our jurisdiction arises under 28 U.S.C. § 1291. We will affirm.

I.

Appellant is a unit of Mercer Street Friends Center, a New Jersey non-profit corporation. (App. at 253.) Among its programs, appellant provides home health care services to the elderly and infirm in the Trenton area. (App. at 002.)

The Friends Center Fund, Inc. is a non-profit corporation that manages appellant's endowment. (App. at 003.) Cadwalder Properties, Inc. ("Cadwalder") was a non-profit corporation established to hold title to the property rented by appellant. (App. at 253-54.) Cadwalder was dissolved as an entity in October 1996, and all of its assets were returned to Mercer Street Friends Center. (App. at 254.) Appellant borrowed money from and paid interest to the Friends Center Fund, Cadwalder, and commercial banks during fiscal year 1996.

In its 1996 fiscal year, appellant received approximately $3 million in Medicare reimbursements. In its annual cost report, appellant claimed $113,000 paid in working capital interest on loans of approximately $1.2 million. (App. at 003.) The claimed interest reflected $43,000 paid on loans from commercial banks and $70,000 paid on

2

loans from the Friends Center Fund. (Id.) In addition, appellant claimed $10,994 in interest paid to Cadwalder. (Id.)

In the spring of 1998, United Government Services ("UGS"), appellant's fiscal intermediary, performed an audit of appellant's finances, reviewed the cost report that appellant had submitted, and issued a "notice of program reimbursement" ("NPR") denying reimbursement for the interest paid on the loans. (App. at 004.) Appellant appealed UGS's decision to the Provider Reimbursement Review Board ("PRRB"), and a hearing was held on August 25, 1999. In a decision dated June 29, 2000, the PRRB, recognizing a need for working capital due to the lag in Medicare payments to providers of services, allowed interest reimbursements on one month's average operating expenses. (App. at 264.) Appellant then sought review in the United States District Court for the District of New Jersey, but on March 19, 2001, the parties agreed to (and the district court entered) an order remanding the matter to the PRRB for a decision on the applicability of the "donor restricted funds" exception to Medicare's related party rule. *See* 42 C.F.R. § 413.153(c)(2).[1] On September 19, 2002, the PRRB issued a new decision, finding that the Friends Center Fund was a donor restricted fund as defined in 42 C.F.R. § 413.153(c)(2), but also concluding that this finding had no effect on its previous

---

[1] 42 C.F.R. § 413.153(c)(2) provides that "[i]f the general fund of a provider 'borrows' from a donor-restricted fund and pays interest to the restricted fund, this interest expense is an allowable cost." This allowance is an exception "to the general rule regarding interest on loans from controlled sources."

3

decision regarding the allowance of interest reimbursements based on one month's expenses. (App. at 87.)

## II.

Appellant again sought review in the district court, both sides eventually moved for summary judgment, and by memorandum opinion dated December 30, 2003, the court granted appellee's motion and denied that of appellant. (App. at 2-15.) The district court found that the PRRB's decision was "a determination based upon already established regulations under the Medicare statute," and thus fit "into the category of an 'interpretive' rule or adjudication." The court rejected appellant's argument that the decision amounted to prohibited rule-making. The court also found that the PRRB decision was supported by substantial evidence, as it held that "the PRRB properly assessed whether the loan for working capital was a necessary expense under the regulations."

## III.

This Court reviews *de novo* a district court's grant of summary judgment. *Greenberg v. United States*, 46 F.3d 239, 242 (3d Cir. 1995). Because this case involves judicial review of a Medicare reimbursement decision of the Secretary, that review is governed by the judicial review provision of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, which is now incorporated into the Medicare statute. *See* 42 U.S.C. § 1395oo(f)(1). Thus, unless this Court finds that the reimbursement decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," we must defer to it. 5 U.S.C. § 706(2)(A).

IV.

Part A of Medicare, a federally funded health insurance program for the elderly and disabled, authorizes payments for covered inpatient hospital services and related post-hospital services, including those furnished by home health agencies. 42 U.S.C. §§ 1395c, 1395d, 1395i. Part A services are furnished by "providers of services," which receive reimbursements from Medicare "fiscal intermediaries," which are typically private insurance companies that act as agents in administering the program. 42 U.S.C. §§ 1395x(u), 1395h.

For the period at issue, Medicare paid directly to home health agencies the "reasonable cost" of covered services furnished to plan beneficiaries. 42 U.S.C. § 1395f(b)(1). "Reasonable cost" is defined as "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." 42 U.S.C. § 1395x(v)(1)(A).

Beyond this statutory definition, federal regulations establish principles to be followed in determining what is and is not a "reasonable cost." Under the regulations, "[n]ecessary and proper interest on both current and capital indebtedness is an allowable cost." 42 C.F.R. § 413.153(a)(1). Interest is "necessary" only if: (1) "[i]t is incurred on a loan made to satisfy a financial need of the provider;" (2) "[i]t is incurred on a loan made for a purpose reasonably related to patient care;" and (3) "[i]t is reduced by investment income except income from" several enumerated sources. 42 C.F.R. § 413.153(b)(2). "Proper" interest is that which is incurred at a rate not in excess of what a prudent

5

borrower would have paid, and that which is paid to a lender not related through ownership or control to the borrower. 42 C.F.R. § 413.153(b)(3).

Appellant contends that the PRRB's decision, instead of being adjudicative of this particular case, imposes "a bright-line 30-day limitation on allowable interest expense for all providers of home health agency services," and thus impermissibly "implements a new methodology for determining the amount of interest expense that may be claimed as an allowable cost." (Appellant's Br. at 19-20, 25-33.) Appellant contends that this decision amounts to prohibited rule-making. Appellant argues in the alternative that the PRRB's decision was unsupported by substantial evidence in that, instead of assessing whether the loan for working capital was a necessary expense under the regulations, the PRRB simply imposed the 30-day limit on interest. (Appellant's Br. at 21, 34-43.) Appellant contends that the "record makes clear that all of Mercer Street Friends' borrowings were necessitated by its needs for working capital and investment in capital acquisitions in order to maintain quality patient care," but that these facts were essentially ignored by the PRRB.

We conclude that the PRRB's 30-day limitation on interest reimbursements was meant to get at "a financial need of the provider," 42 C.F.R. § 413.153(b)(2), and was calculated to ascertain what amount of interest was "necessary" under that regulation and what interest was thus allowable as reimbursement. It was the result of the application of pre-existing policies to the facts of this case. Therefore, appellant's "rule-making" claim

6

fails, because the limitation was imposed pursuant to the standards set out in the regulations, and was based on an analysis of appellant's particular financial situation.

In addition, appellant's claim – that the PRRB's 30-day limitation on interest reimbursement was unsupported by substantial evidence and unrelated to the facts of the case – is without merit. The PRRB found that there was a legitimate need for appellant to borrow working capital because of the one month lag in payments it received from payors. (App. at 263.) Further, the PRRB made findings of appellant's working capital needs based on its operating expenses, and a reasonable interest rate, and decided on an amount allowable as a reimbursement. Therefore, the decision was supported by facts gleaned from evidence presented at the PRRB hearing, was neither "arbitrary" nor "capricious," and was supported by substantial evidence.

V.

For the foregoing reasons, we will AFFIRM the judgment of the United States District Court for the District of New Jersey.

_____

7